IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| CAROLYN CASTERLINE | § | |
| | § | |
| v. | § | C.A. NO. C-12-150 |
| | § | |
| ONEWEST BANK, F.S.B. | § | |

**MEMORANDUM AND RECOMMENDATION ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This is an action challenging foreclosure filed pursuant to Texas state law, which the defendant removed to federal court pursuant to 28 U.S.C. §§ 1332, 1441(a). Plaintiff filed suit in the 343rd Judicial District Court, San Patricio County, Texas seeking a declaratory judgment after defendant sought to foreclose her property due to a default on the home equity loan. (D.E. 1-1, at 5-6). Pending is defendant's motion for summary judgment. (D.E. 7). Plaintiff filed a response in objection to defendant's motion, (D.E. 9), and defendant filed a reply. (D.E. 10). For the reasons stated herein, it is respectfully recommended that defendant's motion be granted and that plaintiff's claims be dismissed.

### I. JURISDICTION

The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. There is complete diversity between the parties because defendant is a federal savings bank that is incorporated and has its principal place of business in California, and plaintiff is a citizen and resident of Texas. (D.E. 1, at 2). The amount in controversy exceeds $75,000.00 exclusive of interest and costs. Id.

### II. BACKGROUND

Plaintiff purchased her residence on June 14, 2007. (D.E. 1-1, at 5). The transaction was financed by IndyMac Bank. Id. She executed both a Texas Home Equity Note ("Note") and

Texas Home Equity Affidavit and Agreement ("Security Instrument"). Id. The Note was for payment of $520,000.00 and named IndyMac as the lender. Id. The Security Instrument transferred the property secured by the Note to Charles A. Brown as trustee and named Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary, solely as nominee for IndyMac, its successors and assigns. Id.; (D.E. 7, at 4). The Security Instrument was recorded as File No. 570180 on June 20, 2007 in the San Patricio County Official Real Property Records. (D.E. 7, at 4).

On July 11, 2008, the FDIC became Receiver of the IndyMac's assets, including plaintiff's Note. Id.; (D.E. 10, at 4). On March 19, 2009, the FDIC sold the assets to defendant. Id. Regarding plaintiff's Note, the transaction was indicated by an allonge which stated that the FDIC, as Receiver and successor to IndyMac, made it "pay[able] to the order of [defendant], without recourse." (D.E. 7, at 4; D.E. 7-2, at 5-6). The allonge is not dated, but it is indorsed by Sandra Schneider acting as defendant's attorney-in-fact. Id. In addition, there is a second allonge attached to the Note that is indorsed by Sandra Schneider acting as defendant's vice president, and which mandates, "without recourse, pay to the order of: _____." (D.E. 7-2, at 5). It is also undated. Id.

On January 4, 2011, MERS executed an Assignment of Mortgage transferring the Security Instrument to defendant effective May 5, 2010. (D.E. 7, at 4; D.E. 7-4, at 1). The Assignment was recorded as File No. 605824 on January 24, 2011, in the San Patricio County Official Real Property Records. Id.

Plaintiff defaulted on her payments pursuant to the Note on October 1, 2009. (D.E. 1-1, at 36). On November 18, 2011, defendant filed an Application for Expedited Foreclosure

Proceeding pursuant to Rule 736 of the Texas Rules of Civil Procedure, seeking to foreclose plaintiff's property pursuant to the Security Interest to satisfy the Note.  (D.E. 1-1, at 6).  As of May 10, 2011, the outstanding principal balance was $509,396.33.  (D.E. 1-1, at 36).

Plaintiff filed this action in San Patricio County pursuant to Rule 736.11 of the Texas Rules of Civil Procedure, alleging that defendant is not entitled to foreclose her property pursuant to the Security Instrument because it is not the holder of the Note, and that the Security Instrument was rendered void by the Assignment because it was severed from the Note.  (D.E. 1-1, at 6-7).  Specifically, she argues that the Note was never transferred to defendant.  (D.E. 1-1, at 5).  Though she acknowledges that MERS may have transferred the Security Instrument to defendant through the January 4, 2011 Assignment, the language in the document indicates that at the time of execution IndyMac still owned the Note.  (D.E. 5-6).  This language precludes defendant from owning the Note, and therefore defendant is not entitled to seek satisfaction of it through foreclosure.  Id.  In addition to declaratory relief, plaintiff seeks to recover attorney's fees related to the action.  (D.E. 1-1, at 6-7).

On May 5, 2011, defendant removed the action to the United States District Court for the Southern District of Texas on the basis of diversity jurisdiction pursuant to § 1332.

### III.  DISCUSSION

Defendant argues that it is entitled to summary judgment because it is the holder of both the Note and Security Instrument.  It further asserts that it is entitled to enforce the Security Instrument even if it does not hold the Note.  (D.E. 7, at 3-9).

**A.     The Standard Of Review For Summary Judgment Motions.**

Summary judgment is appropriate when there is no disputed issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making this determination, the Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. Courts must consider the record as a whole by reviewing all pleadings, depositions, affidavits, interrogatories and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002) (citation omitted). The Court may not weigh the evidence, or evaluate the credibility of witnesses. Id.

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." Caboni, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." Anderson, 477

U.S. at 250–51.

B.	**There Is No Genuine Issue Of Material Fact Regarding Whether Defendant Owns Both the Note and Security Instrument.**

First, defendant argues that there is no fact issue as to whether it owns the Note and Security Instrument and, therefore, is entitled to foreclose plaintiff's property.  Defendant points to the allonge attached to plaintiff's Note indicating that the FDIC, as Receiver and successor to IndyMac, transferred the Note to defendant.  Though the allonge does not indicate when the transaction took place, defendant submitted the affidavit of Rebecca Marks, who serves as defendant's Manager of Default Litigation, testifying that the Note was transferred to defendant on March 19, 2009.  (D.E. 7-1, at 2).  In addition, defendant points to public records showing that the FDIC was appointed Receiver of IndyMac on July 11, 2008, and that it sold its assets to defendant on March 19, 2009.

Plaintiff responds that there is a fact issue regarding if and when defendant became owner of the Note, maintaining that the Assignment of the Security Instrument executed on January 4, 2011 shows that IndyMac owned it at the time because it refers to IndyMac as "the present legal owner and holder of the Note."  (D.E. 9, at 5).  Moreover, the allonge showing that the FDIC transferred the Note to defendant is not dated and therefore leaves open the question of when the transaction took place.  Plaintiff contends that Ms. Marks's affidavit regarding the date of transfer is invalid because the records on which it was based could not have supplied her with personal knowledge about the date.  (D.E. 9, at 3-5).  In addition, she maintains that there are two separate allonges which, depending on the order in which they were executed, create an internal inconsistency, which, in turn, creates a fact issue regarding whether they were properly

affixed to the Note in the first place.[1]

Defendant responds that the Assignment's language does not establish IndyMac as the owner of the Note because it refers to IndyMac, "its successors and assigns, the present legal owner and holder of the Note." (D.E. 10, at 4) (emphasis omitted). At the time of execution, it was IndyMac's successor in interest to the Note and therefore the Assignment refers to defendant as the owner of the Note. In addition, it contends that plaintiff's argument about the affidavit and the allonges is immaterial in light of public records showing that on March 19, 2009, the FDIC sold IndyMac's assets to defendant. Defendant requests that the Court take judicial notice of these public records.

The Court can take judicial notice that the FDIC was appointed Conservator of IndyMac on July 11, 2008, and that it sold its assets to defendant on March 19, 2009. A court has the discretion to take judicial notice of an "adjudicative fact" at any stage of a proceeding. Fed. R. Evid. 201; accord Taylor v. Charter Med. Corp., 162 F.3d 827, 829 (5th Cir. 1998).

In Taylor, the Fifth Circuit explained the basis by which a court may take judicial notice of an adjudicative fact:

> Rule 201 of the Federal Rules of Evidence provides that a court *may* take judicial notice of an "adjudicative fact" if the fact is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to resources whose

---

[1] Specifically, plaintiff argues that if the allonges were executed in the order they were attached to the Note, the first allonge that was attached, which plaintiff claims is a blank indorsement by defendant, proves that there is a gap in the chain of title because defendant would have had to have been the holder of the Note *before* the FDIC transferred it to defendant through the other allonge. (D.E. 9, at 8). On the other hand, assuming the allonge with the blank indorsement was executed *after* the transfer from the FDIC took place, the Note is payable to bearer, and therefore defendant must be in possession of it to enforce it. Plaintiff contends that defendant has not shown possession of the note. Ultimately, plaintiff maintains that the ambiguity created by the two undated allonges creates a fact issue about whether they were properly affixed to the Note, thereby precluding summary judgment. (D.E. 9, at 9-10).

accuracy cannot be questioned."

162 F.3d at 829 (emphasis in original).  The Fifth Circuit has determined that courts may take judicial notice of governmental websites.  See Hawk Aircargo, Inc. v. Chao., 418 F.3d 453, 457 (5th Cir. 2005) (taking judicial notice of approval by the National Mediation Board published on the agency's website); Coleman v. Dretke, 409 F.3d 665, 667 (5th Cir. 2005) (per curiam) (denying rehearing en banc) (finding no objection to the panel taking judicial notice of Texas agency's website); see also O'Toole v. Northrop Grumman Corp., 499 F.3d 1218, 1225 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web.") (citations omitted); Denius v. Dunlap, 330 F.3d 919, 926 (7th Cir. 2003) (taking judicial notice of information on official government website pursuant to Rule 201).  Federal courts have taken judicial notice of other courts' websites.  See, e.g., Graham v. Smith, 292 F. Supp. 153, 155 n.2 (D. Me. 2003) (taking judicial notice of pleadings located on the internet); Anderson v. Cal. Bd. of Prison Terms, No. CIV-04-1172, 2007 WL 404900, at *1 (E.D. Cal. Feb. 2, 2007) (unpublished) (taking judicial notice of records from official website for California Appellate Courts); Collier v. Dretke, No. Civ.A 4:05CV379Y, 2005 WL 1429738, at *1 n.5 (N.D. Tex. June 17, 2005) (unpublished) ("The Court ... takes judicial notice of the disposition of Collier's seven writ applications in the Texas Court of Criminal Appeals through a search on its website."); Booker v. Taft, No. 7:03-CV-263-R, 2004 WL 1253410, at *1 (N.D. Tex. June 8, 2004) (unpublished) (taking judicial notice that petitioner's state habeas petition remained pending based on the Texas Second Court of Appeals' website) (citations omitted).  Furthermore, Rule 201(f) states that "[i]n a civil case, the court must instruct the jury to accept the noticed fact as conclusive."  Fed. R. Evid. 201(f).

Records publicly available at the official website for the FDIC establish that defendant was the holder and owner of plaintiff's Note as of March 19, 2009. According to the website, on July 11, 2008, "IndyMac Bank ... was closed by the Office of Thrift Supervision (OTS) and the FDIC was named Conservator." Federal Deposit Insurance Corporation: Bank Closing Information for IndyMac Bank, F.S.B., Pasadena, CA, FDIC, www.fdic.gov/bank/individual/ failed/indymac.html (last updated Aug. 28, 2008). On March 19, 2009, the FDIC completed the sale of IndyMac to defendant. Id. The website instructs customers who had a loan with IndyMac to "continue to make [] payments as usual," explaining that "[t]he terms of [any] loan will not change under the terms of the loan contract because they are contractually agreed to [in] your promissory note with the failed institution." Id. Moreover, the Loan Sale Agreement between the FDIC and defendant executed on March 19, 2009 indicates that "the [FDIC] hereby sells, transfers, conveys, assigns and delivers to [defendant], and [defendant] hereby purchases, accepts and assumes from [the FDIC], without representation or warranty, express or implied ... all of [the FDIC's] rights, title and interests in, to and under the Assets," where "Assets" includes "all of [the FDIC's] rights, title and interests in, to and under the Loans (including all Notes, the other Loan Documents and Related Agreements) ... endorsed without recourse." Loan Sale Agreement By and Between The FDIC As Receiver For IndyMac Federal Bank, FSB And OneWest Bank, FSB, 11 (Mar. 19, 2009) [hereinafter "Loan Sale Agreement"], *available at* http://www.fdic.gov/about/freedom/IndyMacLoanSaleAgrmt.pdf. In addition, the agreement mandates that defendant and the FDIC "shall cooperate with each other in the physical or other transfer to [defendant] ... [of the assumed] Notes, [] Loan Files, [] Loan Documents ... and [] Related Agreements." Id. at 17-18. To effectuate delivery of IndyMac's loans to defendant, the

agreement specifies that "all Notes evidencing Loans shall be endorsed without recourse, and without representation or warranty by the Seller, express or implied," and that the form "of any endorsement of Notes or allonge to the Notes" should be done in a particular manner, which matches the endorsement on the allonge to plaintiff's Note.[2]  Id.; (D.E. 7-2, at 6).  Therefore, the FDIC website, including the Loan Sale Agreement, establishes the date that IndyMac's assets were transferred to defendant, that the transfer contemplated loans such as plaintiff's, and that individual loan transfers were to be executed in a manner identical to that which took place for plaintiff's Note.  This evidence conclusively establishes that defendant became holder of plaintiff's Note on March 19, 2009.

Plaintiff's argument that there is a factual dispute about ownership of the Note is unfounded.  First, plaintiff's contention that the language of the Assignment proves IndyMac was the owner of the Note on January 4, 2011 relies on a misreading of the document.  As defendant points out, plaintiff's interpretation of the Assignment omits the reference to IndyMac's "successors and assigns," in conjunction with "the present legal owner and holder of the Note."  (D.E. 10, at 4); see (D.E. 1-1, at 33).  In other words, plaintiff suggests that the Assignment refers to "IndyMac ... the present legal owner and holder of the Note," (D.E. 9, at 5), instead of "[IndyMac], its successors and assigns, the present legal owner and holder of the Note."  (D.E. 10, at 4).  Plaintiff's selective reading is incorrect.  Thus, because FDIC records show that defendant was IndyMac's successor by the date of the Assignment, the language in the

---

[2] Specifically, the indorsement set out in the agreement, which matches the allonge to plaintiff's Note, reads: "Pay to the order of One West Bank, FSB, Without Recourse; Federal Deposit Insurance Corporation as Receiver for IndyMac Federal Bank, FSB," and must be signed by defendant's Attorney-in-Fact.  Loan Sale Agreement, at 18; (D.E. 7-2, at 6).

document refers to defendant, rather than IndyMac, as the present holder of the Note.

Second, because ownership of the Note has been established by the FDIC website, the validity, or lack thereof, of Ms. Mark's affidavit is immaterial. See Anderson, 474 U.S. at 238 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.") (citation omitted). Finally, in light of the FDIC records, the fact that the allonge was not dated, or that there is a second allonge with a blank indorsement also attached to the Note, does not cast serious doubts as to defendant's ownership of the Note. Nothing in either allonge indicates that anyone other than defendant ever held the Note after it was transferred by the FDIC, or that defendant does not own it now.[3] See Wills v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995) (explaining that nonmovant's burden is not satisfied by showing "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence") (citation omitted); Brown v. Houston, 337 F.3d 539, 541 (5th Cir. 2003) ("improbable inferences and unsupported speculation are not sufficient to defeat a motion for summary judgment") (citation omitted).

---

[3] Plaintiff argues that depending on the correct order of execution of the two allonges, they prove either that there is a gap in the chain of title or, alternatively, that one of the allonges was a blank indorsement rendering it payable to bearer requiring that defendant be in actual possession of the Note to enforce it. Tex. Bus. & Com. Code § 3.205(b) ("If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a 'blank indorsement.' When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially endorsed."). Specifically, plaintiff suggests that if the allonge indicating a blank indorsement by defendant was executed first, it means that defendant was the holder of the Note at some point *before* the other allonge with a special indorsement by the FDIC was executed. This scenario, though imaginative, has no basis in reality in light of the FDIC records. In addition, even if one of the allonges was a blank indorsement by defendant, defendant has possession of the Note in its corporate records and is therefore entitled to enforce it. (D.E. 10, at 4; D.E. 7-1, at 1). Moreover, plaintiff has come forward with no evidence indicating she has a legitimate fear that defendant is "not the owner and holder of the note ... and that some other entity might later approach [her] demanding payment." Resolution Trust Corp. v. Camp, 965 F.2d 25, 29 (5th Cir. 1992) (affirming summary judgment for defendant that had possession of the original note despite the fact that it could not otherwise prove that it was the owner and holder in due course).

Considering all the evidence, it is respectfully recommended that there is no genuine issue of material fact that defendant was the holder of plaintiff's Note as of March 19, 2009.

**C.     Defendant Is Not Precluded From Enforcing The Note Or Security Instrument.**

Defendant next argues that it is entitled to foreclose on the property regardless of whether it holds the Note.  Specifically, it argues that Texas law differentiates between enforcement of a promissory note and foreclosure.  While recovery on a promissory note typically requires possession of the note, foreclosure of property that secures the note does not.  Thus, even if defendant did not hold or possess the Note, it would nevertheless be entitled to foreclose pursuant to the Security Instrument.  Plaintiff argues in response that defendant is not the holder of the Note, and Texas law precludes it from enforcing the Security Instrument once the Note and Security Instrument were severed.

Regardless of the merits of plaintiff's legal arguments, her claims ultimately fail because defendant was the holder of the Note both at the time of the Assignment and when it sought foreclosure.  However, even assuming *arguendo* that defendant is not the holder, she still cannot survive summary judgment.  Texas law treats promissory notes and deeds of trust as distinct obligations.  Aguero v. Ramirez, 70 S.W.3d 372, 374 (Tex. App. 2002) (citations omitted); see also Carter v. Gray, 81 S.W.2d 647, 648 (Tex. 1935) ("It is so well settled as not to be controverted that the right to recover a personal judgment for a debt secured by a lien on the land and the right to have a foreclosure of lien are severable.") (citations omitted); Hazzard v. Bank of Am., N.A., No. C-12-127, 2012 WL 2339313, at *2 (S.D. Tex. June 19, 2012) (unpublished) (citing Carter, 81 S.W.2d at 648).  This Court has determined that "a qualified mortgagee is not required to also own or hold the note that is associated with a deed of trust in order to properly

11

foreclose the lien." Hazzard, 2012 WL 2339313, at *2 (citing Kan v. OneWest Bank, FSB, No. A-11-CA-381-SS, 2011 WL5419693, at *3-5 (W.D. Tex. Oct. 27, 2011) (unpublished)). The Texas Property Code defines "mortgagee" as a "grantee, beneficiary, owner, or holder of a security instrument," a "book entry system" such as MERS,[4] or, "if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." See Tex. Prop. Code § 51.0001(4). Therefore, in cases in which MERS is named a beneficiary and nominee for the originating lender and its successors and assigns pursuant to a deed of trust, courts have found it has the authority to foreclose pursuant to a security instrument despite not holding the underlying note. Moreover, MERS has the authority to transfer its interest to another party, which, as its successor, would have the same authority to foreclose. See, e.g., Swim v. Bank of America, N.A., No. 3:11-CV-1240-M, 2012 WL 170758, at *3 (N.D. Tex. Jan. 20, 2012) (unpublished) (citing Restatement of Property 3d (Mortgages) § 5.4, cmt. e) (determining that MERS, as the nominee for an originating lender and its successors and assigns, had the authority to foreclose on the deed of trust and authority to transfer its rights and interest to another entity, which would then be able to foreclose if the corresponding note was in default); Eskridge v. Fed. Home Loan Mortgage Corp., et al., No. W-10-CA-285, 2011 WL 2163989, at *5 (W.D. Tex. Feb. 24, 2011) (unpublished) (concluding that the "split" between the note and deed of trust did not prevent MERS, the beneficiary of the deed of trust, from assigning its interest to another entity, which then foreclosed on the property).

---

[4] The MERS system, which has been the subject of federal multi-district litigation, is an electronic mortgage registration system and clearinghouse that tracks beneficial ownerships in, and servicing rights to, mortgage loans. In re Mortgage Elec. Registration Sys. (MERS) Litig., 659 F. Supp. 2d 1368, 1370 (J.P.M.L. 2009). The system tracks transfers and helps avoid recording and transfer fees associated with a sale. Id. at n.6. Pursuant to the Texas Law, MERS is a "book entry system," which is defined as a "national book system for registering a beneficial interest in security instrument and its successors and assigns." Tex. Prop. Code § 51.0001(1).

Though there is ample case law to support defendant's position, there is at least one federal court decision in Texas that adopts plaintiff's argument. In McCarthy v. Bank of America, NA, No. 4:11-CV-356-A, 2011 WL 6754064 (N.D. Tex. Dec. 22, 2011) (unpublished), the court rejected the defendant's argument that it did not have to be the owner or holder of a note to proceed with a foreclosure sale pursuant to a deed of trust. Id. at *4. Disagreeing with other courts' interpretation of the Texas Property Code, the McCarthy court reasoned that implicit in Texas law "is the assumption that whatever entity qualifies as a 'mortgagee' either owns the note or is serving as an agent for the owner or holder of the note; and, the statute assumes that when a foreclosure is conducted by someone other than the owner or holder of the note, the person conducting the foreclosure will be acting as agent or nominee for the owner or holder." Id. It further explained that to hold otherwise would fly in the face of "long-standing, basic principles governing the relationship between real estate borrowers, on the one hand, and their corresponding secured real estate lenders, on the other." Id. Thus, the court found that because the note and deed of trust are inseparable, the defendant did not have the authority to foreclose pursuant to the deed of trust transferred to it by MERS if it did not also own the note. Id. at *3.

Nonetheless, the McCarthy court's conclusion as well as the so-called "bifurcation" theory on which it was based has been "'roundly'" rejected by Texas state courts and federal courts interpreting Texas law. See, e.g., Bierwirth v. BAC Home Loans Servicing, L.P., No. 03-11-00644-CV, 2012 WL 3793190, at *3 (Tex. App. Aug. 20, 2012) (unpublished) (quoting Rearden v. CitiMortgage, Inc., No. A-11-CA-420-SS, 2011 WL 3268307, at *3 (W.D. Tex. July 25, 2011) (unpublished)); see also Kramer v. Federal Nat'l Mort. Ass'n, No. A-12-CA-276-SS,

13

2012 WL 3027990, at *6, 7 (W.D. Tex. May 15, 2012) (unpublished) (rejecting McCarthy because its reasoning "flies in the face of the Texas statutes governing foreclosure under a deed of trust," and explaining that"the authority to conduct a foreclosure under Texas law is governed by an entity's relationship to the deed of trust, rather than the associated note") (citing Aguero, 70 S.W.3d at 374); Puente v. CitiMortgage, Inc., No. 3:11-CV-2509-N, 2012 WL 4335997, at *3, 5 (N.D. Tex. Aug. 29, 2012) (unpublished) (rejecting plaintiff's argument that Note and Security Interest were "split" and therefore unenforceable where MERS was named as the beneficiary and nominee for the originating lender and its successors and assigns, and explaining that "the fact that the note and deed may have been 'split' does not affect either MERS' right to foreclose under the deed or MERS' right to assign"). In light of these cases, the interpretation of the law urged by plaintiff is unpersuasive.

Plaintiff's claim that the Security Instrument was rendered unenforceable when MERS assigned it to defendant is unfounded, and therefore defendant is entitled to enforce the Security Instrument even if it did not hold the Note. MERS qualifies as a "mortgagee" within the meaning of the Texas Property Code because it is named beneficiary in the Security Instrument and because it is a "book entry system." See Richardson v. CitiMortgage, Inc., 6:10cv119, 2010 WL 4818556, at *5 (E.D. Tex. Nov. 22, 2010) (unpublished) (pursuant to Texas Property Code § 51.0001(1), MERS is a "book entry system"). Moreover, even though MERS was not the holder of the Note, the express language of the Security Instrument granted it the power to foreclose plaintiff's property. Id. (explaining that when "mortgage documents provide for the use of MERS ... the provisions are enforceable to the extent provided by the terms of the documents.") (citing Athey v. Mortgage Elec. Registration Sys., Inc., 314 S.W.3d 161, 166 (Tex.

App. 2010)). This right is transferable. Therefore, pursuant to Texas law the Assignment of the Security Instrument gave defendant the authority to foreclose the property even if it did not also hold the Note.

Based on this evidence, it is respectfully recommended that defendant is entitled to foreclose plaintiff's property pursuant to the Security Instrument regardless of whether it holds the Note and that plaintiff's claims be dismissed.

## IV. RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that defendant's motion for summary judgment, (D.E. 7), be granted and that plaintiff's claims be dismissed.

ORDERED this 10th day of October 2012

.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1); Rule 72(b) of the Federal Rules of Civil Procedure; Rule 8(b) of the Rules Governing § 2254 Cases; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).